UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| MARIA D. AGUILAR, | ) | No. ED CV 13-00579-VBK |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| v. | ) | |
| | ) | (Social Security Case) |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits.  Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge.  The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner.  The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

Plaintiff raises the following issues:

1.   Whether the Administrative Law Judge ("ALJ") properly

1  considered Plaintiff's testimony.

2  (JS at 5.)

3

4  This Memorandum Opinion will constitute the Court's findings of

5  fact and conclusions of law.  After reviewing the matter, the Court

6  concludes that the decision of the Commissioner must be affirmed.

7

8  I

9  **THE ALJ'S CREDIBILITY ASSESSMENT OF PLAINTIFF**

10  **WAS NOT LEGALLY ERRONEOUS**

11  Plaintiff raises a single issue. She asserts that the Decision of

12  the Commissioner must be reversed because the ALJ did not properly

13  assess her subjective pain complaints.  Plaintiff's lengthy argument

14  in the JS is that, other than finding an inconsistency between

15  Plaintiff's subjective complaints and the objective medical evidence,

16  the ALJ failed to provide sufficient reasons, as required by statute

17  and regulation, to depreciate her credibility.  For the following

18  reasons, the Court disagrees.

19  The legal standard by which an ALJ must analyze and determine the

20  credibility of a claimant's subjective symptoms is well known.  The

21  ALJ must make sufficiently specific findings to withstand scrutiny by

22  a reviewing Court. See Bunnell v. Sullivan, 947 F.2d 341, 345-346 (9th

23  Cir. 1991).  Further, a discrepancy between objective medical evidence

24  and subjective pain complaints is a relevant factor, but can never be

25  the sole determinative factor in assessing credibility.  Finally, in

26  the absence of malingering (and no finding of malingering was made

27  here), it is the Commissioner's burden to articulate clear and

28  convincing reasons to reject a claimant's subjective pain testimony.

2

Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998)(citing Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).

At the hearing, Plaintiff testified extensively, and provided evidence as to her subjective pain. (See AR at 47-60.)

It is apparent from the Decision that the ALJ carefully evaluated Plaintiff's subjective symptoms as she reported them.  The discussion in the Decision as to credibility is found at AR 22-25.  As will be noted, the ALJ went well beyond reliance on a discrepancy between objective medical evidence and subjective pain testimony in finding that Plaintiff's claims were not entitled to full credibility. The Court will examine those portions of the Decision which are relevant.

Plaintiff testified that her impairments and her subjective pain affect her driving, her ability to take care of herself, and her ability to do household chores. (AR 22, 51-53.)  Indeed, Plaintiff asserted there are many days when she cannot do much at all. (AR 57-58.)  She claimed an inability to sit for more than 30 to 40 minutes, stand for more than 5 minutes, walk more than 15 minutes, and lift less than 10 pounds. (AR 22, 53-54.)  She does not use an assistive device for walking (AR 56), but claims that due to arthritis, it hurts to use her right hand. (AR 22, 54-55.)

Plaintiff further testified that every two to three months she receives injections for her pain, and after that she has a couple of good days and can do some limited activities. (AR 51, 58.)  But these good days might last for only one to two days. (AR 59.) Plaintiff testified that after only three or four weeks the injection begins to wear off, and then, when she can no longer take the pain, she goes to the doctor. (AR 22, 58-59.)  Plaintiff describes that she has mostly bad days, and on those days, she can do almost nothing. (AR 58-59.)

As noted, the ALJ extensively reviewed the record as it pertained to the credibility assessment which he was required to make. Thus, he noted that in June 2010, Plaintiff requested a second injection of Toradol with Solumedrol. She had had this treatment in March 2010, and felt that at that time it had been helpful. (AR 23, 408.) The ALJ noted that Plaintiff did receive the injections she requested, but that there were limited findings on examination. The examining doctor found in the right upper extremity evaluation only generalized tenderness over the whole elbow but normal range of motion, with no swelling, effusion, or deformity. Plaintiff appeared to be in no distress, she appeared calm and relaxed, and she had normal gait. She reported getting flares every four to six weeks, but as the ALJ noted, this is "inconsistent with her testimony that the flares occur every two to three weeks." (AR 23.) Plaintiff also was being seen for her symptoms only every two to three months, and as the ALJ noted, she saw a rheumatologist on August 6, 2010 and reported feeling well. She indicated that the Deponedrol injection that she had received in June was very helpful, and that she was exercising more on a regular basis, which included pool exercise. (AR 23, citing exhibits.)

Thus, as the ALJ noted, Plaintiff's own self-reporting to her doctors indicated that the injections provided three and a half months of relief with no significant symptoms. (AR 23, 466-467.) In other words, her impairments were responsive to medication. Plaintiff testified that only when she could no longer take the pain would she see her doctor, but the ALJ noted an inconsistency between that assertion and Plaintiff's statement that the effects of the injections wore off within three to four weeks. (AR 58-59.)

The ALJ also noted that in April 2011, treating physician Dr. Atkinson indicated that Plaintiff claimed to have pain and fatigue, and "at times," stiffness in the morning. (AR 23, 711-712.)  The ALJ reasonably took this to mean that the intensity and consistency of Plaintiff's symptoms were less than her own reports as to these issues.

In June 2011, Plaintiff was examined by Dr. Atkinson and complained of being miserable and unable to get out of bed on "some days." (AR 23, 762.)  The ALJ found this statement to be inconsistent with Plaintiff's testimony that most of her days were bad, and even after an injection, she was only provided with a day or two of relief a week. (AR 23-24, 59.)  The ALJ further noted that Plaintiff refused to try medication which might help her arthritis more than the medications she was taking for her Lupus condition. (AR 24, 766.)

Plaintiff's claims as to limitations in her ability to stand, walk, and sit, were not borne out by examinations revealing she had normal gait, and that on most of her office visits she reportedly was in no distress. (AR 340, 351, 409, 749.)

The ALJ did consider Plaintiff's daily activities and noted that while she claimed to need some help in some of these functions, she was capable of performing a variety of activities, in that she was home alone and functioning on her own for most of the day. (AR 24, 47-48, 51-53.)

It was further noted by the ALJ that most of Plaintiff visits to her medical providers were for routine care, and that despite her claims of significant mobility problems, no provider ever prescribed a cane, walker or other assistive device. (AR 24, 56, 305, 310, 338, 408, 466, 491, 711, 748, 761.)

All in all, the ALJ's credibility assessment in this case went far beyond a simple reliance on discrepancies between subjective pain and objective medical evidence, and, in fact, carefully analyzed the evidence to determine a significant amount of inconsistencies and discrepancies which, under prevailing legal requirements, substantiates the decreased credibility finding. For that reason, the Court finds that there is no basis to disturb the credibility finding. The Decision of the Commissioner will be affirmed, and this matter will be dismissed with prejudice.

**IT IS SO ORDERED**.


DATED: February 12, 2014                    /s/
                                VICTOR B. KENTON
                                UNITED STATES MAGISTRATE JUDGE